IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| CAROLINA QUARRIES, INC., | ) |
| Plaintiffs, | ) |
| v. | ) 1:20-CV-1043 |
| MARTIN MARIETTA MATERIALS, INC., | ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

LORETTA C. BIGGS, District Judge.

Before the Court is a Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), filed by Defendant Martin Marietta Materials, Inc. (ECF No. 13.) For the reasons that follow, the Court denies Defendant's motion.

## BACKGROUND

Plaintiff, Carolina Quarries, Inc., operates a granite quarry in Salisbury, N.C. (ECF No. 1 ¶¶ 9–10.) Plaintiff contracted to lease mineral rights in a portion of that quarry totaling 150-acres (the "Property") to Defendant—a crushed stone, sand, and gravel supply company. (*Id.* ¶¶ 16, 21.) Defendant signed the Option and Lease Agreement ("Lease") in 1998 and formally exercised its option in 2001. (*Id.* ¶¶ 22–26.)

The Lease provided that its purpose was to "grant all rights to [Defendant] for mining, quarrying, and removal" from the Property minerals, "together with the full and exclusive right, privilege and option . . . to construct, operate, or maintain mining itself, or to permit

others to construct, operate or maintain" mining facilities and activities, "which in the sole discretion of [Defendant] are required for the processing or selling of crushed aggregate." (ECF No. 1-1 at 3.) In the Lease, the parties agreed that "if [Defendant] commences its mining operation, then, in addition to operating its own pit, [Defendant] will use and process as much of [Plaintiff's] 'waste rock' as [Defendant], in its sole discretion, deems feasible and practicable." (*Id.* at 4.) The Lease required Defendant to pay an annual rental over the thirty-year term. (*Id.*) Defendant was additionally required to pay royalties to Plaintiff on each ton of crushed aggregate it mined and sold; however, the parties agreed that "[t]here is no requirement that [Defendant] continuously conduct quarrying activity on the premises or that [Defendant] actually remove or sell stone, sand or gravel from the premises, it being the clear understanding of the parties that the minimum rental fairly compensates [Plaintiff] for the use of the premises." (*Id.*)

Under the Lease, a "default" would occur if Defendant should "neglect or fail to pay the rent or other charges payable hereunder" when due and for a period of fifteen days after written notice from Plaintiff; or "vacate or abandon the Property for a period of time exceeding six (6) months." (*Id.* 7–8.) If Defendant defaulted, the Lease allowed Plaintiff to "immediately or at any time thereafter, and without demand or notice, enter into and upon the Property or any part thereof . . . and repossess the same . . . and expel [Defendant] . . . and upon entry, as aforesaid, this lease shall terminate." (*Id.* at 9.)

Defendant paid the annual rental each year from 2001,[1] but never commenced mining operations. (ECF No. 1 ¶ 45.) In November 2019, the parties' representatives met in Salisbury

---

[1] It is unclear from the pleadings when Defendant last paid its annual rent to Plaintiff.

to inspect the Property and discuss Defendant's intentions. (*Id.* ¶ 53.) Defendant did not, according to Plaintiffs, follow up concerning their plans or commence mining operations. (*Id.* ¶ 55.) In April 2020, Plaintiff wrote Defendant to announce that the Lease was terminated, claiming that Defendant had "abandoned the premises as it has failed to operate from and occupy them . . . since the execution of the Agreement." (*Id.* ¶ 57–58.)

Plaintiff filed suit on November 18, 2020, seeking declaratory judgment and summary ejectment. (*Id.* ¶¶ 60–73.) Under Count I, Plaintiff seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201 (2018), that: (1) Defendant is in default under the Lease; (2) Plaintiff may properly take possession of the Property and bar Defendant from the same; (3) the Lease is terminated; and (4) Defendant is liable for the minimum annual rental due for the balance of the 30-year lease term. (*Id.* ¶ 66.) Under Count II, Plaintiff requests a judgment for damages and authorizing its immediate repossession of the Property and ejectment of Martin Marietta under North Carolina law. (*Id.* at ¶ 73.) Defendant filed the present motion on January 8, 2021. (ECF No. 13.)

## DISCUSSION

A motion to dismiss under Rule 12(b)(6) is meant to "test[ ] the sufficiency of a complaint" and not to "resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). To survive such a motion, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering a Rule 12(b)(6) motion, a court "must accept as true all of the factual allegations contained in the

complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam), and all reasonable inferences must be drawn in the non-moving party's favor, *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). In reviewing a 12(b)(6) motion, the court may "consider documents attached to the complaint, *see* Fed. R. Civ. P. 10(c), as well as those attached to the motion to dismiss, so long as they are integral to the complaint and authentic." *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009).

"In a contract dispute, 'the construction of ambiguous contract provisions is a factual determination that precludes dismissal on a motion for failure to state a claim.'" *1899 Holdings, LLC v. 1899 Liab. Co.*, 568 F. App'x 219, 224 (4th Cir. 2014) (quoting *Martin Marietta Corp. v. Int'l Telecomms. Satellite Org.*, 991 F.2d 94, 97 (4th Cir. 1992)). Under North Carolina law, "[a]n ambiguity exists where the language of a contract is fairly and reasonably susceptible to either of the constructions asserted by the parties." *Duke Energy Corp. v. Malcom*, 630 S.E.2d 693, 696 (N.C. Ct. App. 2006).

### A. Declaratory Judgment

The Declaratory Judgment Act gives the federal courts power "[i]n a case of actual controversy within its jurisdiction" to "declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (2018). A federal court has jurisdiction in a declaratory judgment proceeding when three elements are met: (1) the complaint alleges an "actual controversy" between the parties "of sufficient immediacy and reality to warrant issuance of a declaratory judgment"; (2) the court has an independent basis for jurisdiction; and (3) exercising

jurisdiction is not an abuse of discretion. *Volvo Const. Equip. N. Am., Inc. v. CLM Equip. Co., Inc.*, 386 F.3d 581, 592 (4th Cir. 2004) (internal quotations omitted).

    1.    *Actual controversy*

Under the first element, a case "meets the actual controversy requirement only if it presents a controversy that qualifies as an actual controversy under Article III of the Constitution," meaning the plaintiff has standing to sue. *Id.* at 592; *Jones v. Sears Roebuck & Co.*, 301 F. App'x 276, 282 (4th Cir. 2008). A plaintiff has standing if: (1) plaintiff "suffered an actual or threatened injury that is not conjectural or hypothetical," (2) "the injury [is] fairly traceable to the challenged conduct," and (3) "a favorable decision [is] likely to redress the injury." *Jones*, 301 F. App'x at 282 (citing *Lujan v. Def. of Wildlife*, 504 U.S. 555, 560–61 (1992)). An actual controversy always exists when plaintiff seeks declaratory relief "in order to avoid the accrual of potential damages for past actions." *Volvo*, 386 F.3d at 593.

Here, the first element is met. An actual controversy exists between Plaintiff, who asserts that the Lease is terminated, and it may reenter the Property, and Defendant, who argues that the Lease has not terminated and that it retains exclusive mineral rights in the Property. This active dispute over Plaintiff's property rights constitutes a concrete and particularized injury to Plaintiff that is directly traceable to Defendant's opposition to Plaintiff's suit and is redressable through declaratory judgment. Under *Volvo*, Plaintiff has sufficiently pleaded an actual controversy.

Defendant argues that no actual controversy exists because the Lease is unambiguous and, therefore, declaratory judgment is "superfluous." (ECF No. 16 at 8.) Specifically, Defendant argues that a plain reading of the Lease shows that Defendant is not in default,

Plaintiff may not reenter the Property, the Lease is not terminated, and Defendant is not liable for damages. (*Id.*) These contentions relate to the merits of Plaintiff's claims, not whether Plaintiff has standing under Article III. As discussed below, the Lease is unambiguous as to some terms and is fairly and reasonably susceptible to multiple interpretations. Thus, Plaintiff has standing, and the first element is met.

    2.    *Independent Basis for Jurisdiction*

Under the second element, a court must possess an "independent basis" for subject matter jurisdiction over the case, such as federal question or diversity jurisdiction. *Volvo Const. Equip. N. Am., Inc.*, 386 F.3d at 592. Here the independent basis appears to be diversity jurisdiction. To establish diversity jurisdiction, a plaintiff must show that (1) the amount in controversy exceeds $75,000, and (2) there is complete diversity between the parties, meaning no plaintiff shares state citizenship with any defendant. 28 U.S.C. § 1332(a)(1) (2018); *Johnson v. Am. Towers, LLC*, 781 F.3d 693, 704 (4th Cir. 2015). "For federal diversity jurisdiction purposes, a corporation is a citizen of the states in which it has been incorporated and in which it has its principal place of business." *Cent. W. Va. Energy Co. v. Mountain St. Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011). "Principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). Citizenship is fixed "'at the time the action is filed,' regardless of later changes in . . . the parties' citizenship." *Porsche Cars N. Am., Inc. v. Porsche.net*, 302 F.3d 248, 255–56 (4th Cir. 2002) (quoting *Freeport–McMoRan, Inc. v. K N Energy, Inc.*, 498 U.S. 426, 428 (1991)).

Here, Plaintiff alleges that Defendant is liable for the minimum annual rental due for the balance of the lease term—$40,000 per year for the remainder of the thirty-year term, as well as damages available under its summary ejectment motion. (ECF No. 1 ¶¶ A.iv., B.) Plaintiff alleges that it would cost millions of dollars to remedy Defendant's failure to process Plaintiff's waste rock. (*Id.* ¶ 50.) The amount in controversy is thus in excess of $75,000. At the time of the suit, Plaintiff was incorporated in Delaware. (*Id.* ¶ 9.) Plaintiff's directors and officers are located either in Vermont or Quebec, Canada. (*Id.* ¶ 14.) Regardless of whether Plaintiff's principal place of business is in Vermont or Canada, the Court finds that Plaintiff is not a North Carolina citizen for purposes of diversity jurisdiction. Defendant is incorporated in North Carolina and has principal place of business in North Carolina. (*Id.* ¶ 14.) There is complete diversity between the parties.

The Court finds that it has diversity jurisdiction over this case. Thus, element two is met.

   3. *Court's Discretion*

Under the third element, a court that possesses jurisdiction to issue a declaratory judgment "may nonetheless, in the exercise of its discretion, decline to entertain the action." *Volvo*, 386 F.3d at 594. A court has "great latitude in determining whether to assert jurisdiction over declaratory judgment actions," but can only decline jurisdiction with "good reason." *Id.* Indeed, a court is "obliged to rule on the merits of a declaratory judgment action" when declaratory relief "will serve a useful purpose in clarifying and settling the legal relations in issue" and "will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Id.* (quoting *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325

7

(4th Cir. 1937). Declaratory judgment may serve useful purposes if it clarifies legal obligations, eliminates uncertainty, and clarifies contractual rights. *See id.*

Here, there is a dispute over the meaning of certain terms in the Lease. Declaratory relief would clarify Defendant's duties under the Lease, specifically by determining what type of conduct is covered by the "abandon or vacate" clause and would clarify whether Plaintiff has a right to reenter the Property. Currently, the parties are in limbo: they disagree over whether the Lease has been terminated, whether either party must continue to perform, and, if so, what performance is required.

Defendant argues that the Court should decline jurisdiction because Plaintiff has already terminated the lease. (ECF No. 16 at 9.) It argues that "declaratory judgment is inappropriate solely to adjudicate past conduct." (*Id.* (quoting *Del. St. Univ. Student Hous. Found. V. Ambling Mgmt. Co.*, 556 F. Supp. 2d 367, 374–75 (D. Del. 2008)).) Defendant, however, also opposes Plaintiff's claim for summary ejectment. (ECF Nos. 13, 14, 16.) If Defendant successfully argues that summary ejectment is unavailable to Plaintiff under North Carolina law, then a declaratory judgment may be necessary to clarify the parties' rights and obligations under the existing contract. Thus, the Court will exercise jurisdiction over Plaintiff's claim for declaratory judgment.

### B. Summary Ejectment

A lessor may seek summary ejectment in North Carolina where "the tenant or lessee . . . has done or omitted any act by which, according to the stipulations of the lease, his estate has ceased." N.C. Gen. Stat. § 42-26(2) (2019). To state a claim, a plaintiff need only allege that (1) "the relationship of landlord and tenant exists," *Adams v. Woods*, 609 S.E.2d 429, 431

(N.C. Ct. App. 2005), and (2) defendant violated "terms of the lease entitling plaintiff to reenter the leased premises," *Chrisalis Props., Inc. v. Separate Quarters, Inc.*, 398 S.E.2d 628, 632 (N.C. Ct. App. 1990).

Here, Plaintiff pleads that it and Defendant are parties to the Lease, Defendant is in default, and Defendant's default authorizes Plaintiff to take possession of the Property. (ECF No. 1 ¶ 68–70.) Specifically, Plaintiff alleges that Defendant could be in default under the Lease if it "vacate[s] or abandon[s] the Property for a period of time exceeding six (6) months." (*Id.* ¶ 39 (citing ECF No. 1-1 at 7).) Violation of this provision, Plaintiff claims, permits it to reenter the Property. (*Id.* ¶ 40 (citing ECF No. 1-1 at 8).) Finally, Plaintiff alleges that Defendant violated this provision by failing to ever take possession of the Property or make plans to do so nineteen years after first signing the Lease. (*Id.* ¶ 45, 57.)

Defendant contends that it has no obligation under the Lease to take possession of the Property. (ECF No. 14 at 10–11.) It argues that the unambiguous plain language of the contract gives Defendant the option, entirely at its discretion, to build or mine on the Property. (*Id.* at 3–4.) Further, Defendant argues that the Lease is "consistent with the common law governing mineral rights." (*Id.* at 11.) Under Defendant's interpretation, "abandonment" occurs only when "a third party actually mines the minerals in conflict with the grantee/lessee's rights." (*Id.* (citing *Cordell v. Grove Stone & Sand Co.*, 102 S.E.2d 138, 142 (N.C. 1958).) Defendant "vacates," it argues, "only" by failing to make "payment of the minimum annual rent." (*Id.* at 12 (citing *Oklahoma Plaza Inv'rs v. Wal-Mart Stores, Inc.*, 155 F.3d 1179, 1181 (10th Cir. 1998).)

9

The Court finds that the Lease is ambiguous because clauses cited by Plaintiff and Defendant appear to be fairly and reasonably susceptible to multiple constructions. On one hand, the Lease appears not to require Defendant to engage in any mining or construction. The Lease grants Defendant the "option" to mine or construct facilities, includes "no requirement" that Defendant "actually remove or sell stone, sand or gravel," and provides that Defendant may process Plaintiff's waste rock "if" Defendant "commences its mining operation." (ECF No. 1-1 at 3–4.)

The Lease also, however, appears to allow Plaintiff to reenter the Property if Defendant "shall vacate or abandon the property" for more than six months. (*Id.* at 8.) Neither "vacate" nor "abandon" is defined in the Lease. It may be, as Defendant argues, that it can only "vacate or abandon" the Property by expressly relinquishing their rights—such as by failing to pay their rent. Defendant argues that this interpretation is consistent with N.C. common law, and the Court finds that the Lease is fairly and reasonably susceptible to this interpretation. However, failure to timely pay rent is a separate and distinct cause for default under the Lease. (*Id.* at 7.) Thus, "abandon or vacate" can also fairly and reasonably be interpreted to refer to acts other than failure to pay rent—acts that amount to desertion of any plans to commence mining at all. *See Abandon*, *Black's Law Dictionary* (11th ed. 2019) ("To desert or go away from permanently."). The term "abandon," therefore, can also be fairly and reasonably read to include the present situation where, as alleged by Plaintiff, Defendant refuses to use the property but also seeks to prevent Plaintiff from reentering or transferring mineral rights to another corporation. This reading does not contradict language giving Defendant discretion over where, when, and how to mine, but does mitigate the outer limits of Defendant's

10

discretion by preventing Defendant from simultaneously deserting the Property and refusing to allow Plaintiff to reenter.[2]

The Lease is ambiguous in that it is fairly and reasonably susceptible to both Plaintiff's and Defendant's interpretations. Construction of the "abandon or vacate" clause is a factual determination that precludes dismissal on a motion for failure to state a claim. Thus, Defendant's motion must be denied.

## ORDER

IT IS THEREFORE ORDERED that the Defendant's Motion to Dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6), (ECF No. 13), is DENIED.

This, the 3rd day of September 2021.

/s/ Loretta C. Biggs
United States District Judge

---

[2] Defendant argues that their decision not to construct and operate an active quarry "cannot trigger the Default Provision" because that power is discretionary. Under North Carolina law, however, such discretionary powers must be exercised in good faith. *See Strategic Outsourcing, Inc. v. Continental Cas. Co.*, 274 F. App'x 228, 233 (4th Cir. 2008) ("When a contract confers discretion on one of the parties that affects the rights of the other, that discretion must be exercised in a reasonable manner based upon good faith and fair play.") Thus, it is fair and reasonable to read the Lease to grant Defendant some, but not boundless, discretion over mining operations.

11